**United States District Court
Eastern District of Michigan**

United States of America

    Plaintiff,

vs.

Gregory Brown,

    Defendant.

Case No. 92-cr-81127
Honorable David M. Lawson

_____

**United States' Response Opposing
the Defendant's Motion for Compassionate Release**
_____

    Gregory Brown was part of a notoriously prolific and dangerous drug trafficking gang called "Best Friends." Best Friends distributed significant amounts of powder and crack cocaine in the Detroit area but branched out into Ohio, Kentucky and Tennessee. (PSR ¶10). Over the course of the conspiracy, Best Friends murdered seven people, including Walter Daniels, the victim Brown was convicted of murdering as an aider and abettor. (PSR ¶ 11). Daniels was shot 16 times. (PSR ¶ 28).

    Brown was charged with conspiracy to distribute crack cocaine and cocaine in violation of 21 U.S.C. § 846 (Count 1); intentional killing in furtherance of a cocaine conspiracy involving five or more kilos, in violation of 21 U.S.C. § 848(e)(1)(A) (Count 15); and using a firearm in furtherance of a controlled

1

substances offense in violation of 18 U.S.C. § 924(c) (Count 16). *See* Second Superseding Indictment: ECF No. 882, PageID.10277-92. Brown was convicted by a jury of all three counts. *See* Verdict Form: ECF No. 1528, PageID.16053; *see also United States v. Brown,* 221 F.3d 1336 (Table), 2000 WL 876382 *1 (6th Cir. 1999).

Because of the murder, Brown's guideline range was life in prison. (PSR ¶¶ 37-38); *see* Judgment: ECF No. 1592, PageID.16023-16028; ECF No. 1618 PageID.16006-11. Brown's offense level was 43. (PSR ¶¶ 37-38). Because this trial occurred before *Apprendi*, the jury did not make a specific finding of the drug quantities. However, the PSR held Brown accountable for over three kilograms of powder cocaine and at least 50 grams but less than 150 grams of crack cocaine on the drug conspiracy conviction. (PSR ¶ 32). Brown also had a prior felony drug conviction, which enhanced his sentence pursuant to 21 U.S.C. § 851 from a mandatory ten years on the drug conspiracy count to 20 years. (PSR ¶ 7).

The Court imposed a sentence of life, to run concurrently, on the drug conspiracy and the murder count with a five-year term on the firearm count to run consecutive to the life sentence on the other two counts. *See* Judgment: ECF No. 1592, PageID.16023-16028; ECF No. 1618 PageID.16006-11.

Brown began serving a life sentence June 30, 1997. He was given jail credit from December 6, 1995 through his sentencing date in 1997. *See* Public

Information, attached as Exhibit 1. He now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). His motion should be denied.

Brown's arguments in support of release fall into four categories: facts that existed when Brown was sentenced, such as his age as well as the sentences received by co-defendants who cooperated with the government in its prosecution; disparity in sentencing within the case and disparity compared to similarly situated defendants more broadly; and a change in the law, specifically the applicability of *Booker*. He also contends that his rehabilitation warrants release. Brown's arguments are not extraordinary and compelling. The Court should deny his motion.  Brown does not satisfy the substantive requirements for compassionate release, and the § 3553(a) factors—which the Court must also consider under § 3582(c)(1)(A)—do not support release.

Brown received a life sentence because he was involved in the murder of one individual, Walter Daniels, and he was also found to have used a firearm in furtherance of that murder. Moreover, he participated in a drug trafficking conspiracy. His offense warranted the life sentence he received. These § 3553(a) factors engulf any others.

While Brown does not contend that his request for release is based on concerns about Covid-19, the government nonetheless offers some information about Covid-19 and the BOP's response to it because this is a common

3

compassionate release argument. First, Brown was administered the Pfizer-BioNTech vaccination for Covid-19 on February 5, 2021, receiving his second dose on February 24, 2021. *See* 2021 Vaccination Record, Exhibit 2 (under seal).

Offering the Covid-19 vaccine to BOP inmates is part of "a phased approach nationwide," implementing an increasingly strict protocol to minimize the virus's spread in its facilities, which has been ongoing since January of 2020. *Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). Moreover, at Talladega FCI, as of October 20, 2021, 726 of 819 inmates at the FCI have been vaccinated as well as 144 staff. https://www.bop.gov/coronavirus/. Currently, there are no confirmed cases of Covid-19 among inmates, or staff, at Talladega FCI. *Id.*

The BOP also continues to assess its entire population to determine which inmates face the most risk from Covid-19, pose the least danger to public safety, and can safely be granted home confinement. As of October 20, 2021, this process has already resulted in the BOP releasing at least 33,112 inmates, 7,582 of whom are on home confinement presently. Especially given the BOPs' efforts—and "the legitimate concerns about public safety" from releasing inmates who might "return to their criminal activities," *Wilson*, 961 F.3d at 845—the Court should deny Brown's motion for compassionate release.

**I.     Background**

The "Best Friends" gang operated for over a decade distributing cocaine and crack cocaine in Detroit, eventually expanding to Ohio, Kentucky, Georgia, Pennsylvania, New York, Connecticut, Tennessee, North Carolina and Florida. (PSR ¶ 10). The "Best Friends" also committed contract murders and drive-by shootings to maintain control over their drug distribution territory, to threaten rivals and to retaliate for failure to pay drug debts. (PSR ¶ 11). Brown killed or caused the intentional killing of Walter Daniels as an enforcer for the gang, (PSR ¶ 28) in addition to working as a drug distributor. (PSR ¶¶ 15, 30, 31).

After a 32-day trial and about 70 witnesses, the jury convicted Brown, and others, of intentional killing and/or aiding and abetting intentional killing in furtherance of a continuing criminal enterprise (21 U.S.C. § 848(e)(1)(A)) while engaging in a drug trafficking conspiracy (21 U.S.C. § 846) and use or carrying of a firearm in relation to a drug trafficking crime (18 U.S.C. § 924(c)). The court sentenced Brown to concurrent life sentences for the drug conspiracy and intentional killing counts and a consecutive 5 years for the § 924(c) count. *See* Judgment, ECF No. 1359; *Brown,* 2000 WL 876382 at *1.

But Brown has a prior criminal history as well. He had been involved with guns and drugs prior to his involvement with the Best Friends gang. He was convicted of unlawfully carrying a concealed firearm and possession of cocaine.

(PSR ¶¶ 50-52, 53-55). He was on parole for the possession offense when he began participating in Best Friends violence and drug trafficking. (PSR ¶¶ 57-58).

Brown began serving his prison sentence on June 30, 1997 and is currently incarcerated at Talladega FCI in Alabama. He is 49 years old, with no projected release date because he is serving two concurrent life sentences and a consecutive five-year sentence. Brown argues, much as he does in his First Step Act motion and his § 2255, that his long sentence should be commuted due to changes in the law. He also contends that facts that existed at sentencing and his rehabilitation constitute extraordinary and compelling reasons in support of relief. Brown has exhausted his administrative remedies with BOP, including resolution of an appeal of the Warden's denial of his request for release. *See* Request to Warden, Exhibit 3; Warden's Denial, Exhibit 4; Appeal Resolution, Exhibit 5.

## II. The Court should deny Brown's motion for compassionate release.

Brown's motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow.

*United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

*First*, compassionate release requires exhaustion. If a defendant moves for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the Bureau of Prisons or waiting 30 days from when the warden at his facility received his request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). And as the Sixth Circuit has held, this statutory exhaustion requirement is mandatory. *Alam*, 960 F.3d at 832–36.

*Second*, even if a defendant exhausts, he must show "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A). Changes in the law, such as *Booker's* non-retroactivity change in sentencing law, are not extraordinary and compelling reasons in support of compassionate release. *United States v. Hunter,* 12 F.4th 555, 562-63 (6th Cir. 2021). Neither are non-retroactive statutory changes in the First Step Act of 2018. *Id.* 563-64; *United States v. Jarvis,* 999 F.3d 442, 445-46 (6th Cir. 2021). Likewise, the Sixth Circuit recently held that "Section 3582(c)(1)(A) precludes a court from simply taking facts that existed at sentencing and repackaging them as 'extraordinary and compelling." *Hunter,* 12 F.4th at 569. Finally, "'[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.' 28 U.S.C. § 994(t)." *Id.,* at 572.

7

*Third*, even if a defendant is eligible for compassionate release, a district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020). Those factors require the district court to consider the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a). This Court's "initial balancing of the § 3553(a) factors during [the defendant's] sentencing" is presumed to "remain[] an accurate assessment as to whether those factors justify a sentence reduction" when a defendant requests compassionate release. *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021).

### A. Brown has not shown "extraordinary and compelling reasons" for compassionate release.

Resolving the merits of a compassionate-release motion involves a "three-step inquiry": a district court must (1) "find that extraordinary and compelling reasons warrant a sentence reduction," (2) "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021); 18 U.S.C. § 3582(c)(1)(A). In *Elias*, the Sixth Circuit held that USSG § 1B1.13 is not an "applicable" policy statement for defendant-initiated motions for compassionate

8

release. So the Court's analysis must focus on the first and third steps of the inquiry here. *Id*.

The Sixth Circuit recently analyzed and reversed a district court's granting of compassionate release to Ronald Hunter. Hunter is also serving a life sentence for his involvement in the murder of a 23-year-old woman who had allegedly stolen money from the leader of a drug enterprise. *Hunter,* 12 F.4th 555, 559 (6th Cir. 2021)*.* Like Brown, Hunter argued that had *Booker* been in effect when he was sentenced, he may not have received the same sentence because the guidelines, which had been mandatory, became advisory. *Id.* at 563. Recent Sixth Circuit cases, *Hunter* and *Jarvis,* foreclose this argument. *Jarvis*, which addressed non-retroactive changes in the First Step Act of 2018, held that such changes cannot be used to find extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A)(i). *Jarvis,* 999 F.3d 442, 445-46 (6th Cir. 2021). *Hunter* applies the same reasoning in the context of non-retroactive changes in sentencing law: "The non-retroactivity doctrine is an ordinary rule applied to all criminal defendants. Because of that rule, *Booker* is not retroactive, and nothing in § 3582(c)(1) suggests that Congress intended to displace that rule in the context of sentence reductions." *Hunter,* 12 F.4th at 563. Consequently, Brown's argument regarding *Booker* and conjecture that he may not have received a mandatory life sentence if *Booker* had been in effect is without support in law and is, instead,

9

foreclosed. The *Hunter* court emphasized that the phrase "extraordinary and compelling reasons" in § 3582(c)(1)(A)(i) is not a license to override the non-retroactivity of any statute, Guideline, or Supreme Court decision whenever a district court believes that the non-retroactive nature of the law is unfair or inequitable." *Hunter*, 12 F.4th at 568.

In addition to his "change in the law" argument, Brown, like Hunter, also contends that some of the facts that were in existence at the time of sentencing - his age when he committed the crimes of conviction and his co-defendants' sentences - are somehow extraordinary and compelling now. This contention is likewise foreclosed by *Hunter*. Section 3582(c)(1)(A) does not allow a court to take facts that existed at sentencing and "repackage" them as extraordinary and compelling. *Id.* at 569. Such an approach cripples the general rule of finality and renders the "extraordinary-and-compelling-reasons requirement 'superfluous, void or insignificant.'" *Id.* (citations omitted). Such an approach would make § 3582(c)(1)(A) an "unbounded resentencing statute." *Id.* at 570.

The *Hunter* court acknowledged the scientific articles relied on by the district court about how Hunter's age and drug and alcohol use may have made him unable to make rational decisions at the time he committed his crimes but concluded that "there will always be a new academic article a defendant can marshal to recharacterize their background and the facts of the offense," which

10

again undercuts finality. *Id.* at 571. Moreover, Brown was an adult, not a juvenile offender when he began participating in the "Best Friends" enterprise.

Another set of facts that existed at Browns' sentencing was the sentencing results for his co-defendants. Brown compares his life sentence to incomparable co-defendants, all of whom cooperated, claiming unjust disparities between his and their sentences. But as noted in *Hunter,* our criminal justice system is more commonly one of pleas than trials, and this can result in individuals who accept a plea bargain receiving a shorter sentence than someone who goes to trial. *Id.* at 572. "And that trade-off is permissible." *Id.* Even if there appears to be a disparity between Brown and some co-defendants who cooperated, there is nothing extraordinary and compelling "about a disparity that results from a co-defendant's decision to plead guilty and assist the government." *Id.* But when comparing Brown with his co-defendants who proceeded to trial, there is not any disparity between him and two of them who were also convicted of intentional killings in the course of the "Best Friends" enterprise. For example, Gene Polk received four concurrent life terms plus 45 years' imprisonment, and John Gordon was sentenced to two concurrent life sentences. *Polk,* 182 F.3d 919 at *11, fn 1 (6th Cir. 1999). Different sentences exist for valid reasons, "such as differences in criminal histories, the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government." *United States v. Conatser,* 512 F.3d 508, 522

11

(6th Cir. 2008) (relied on by *Hunter,* 12 F.4th at 572). Neither Browns' age when he committed the crimes nor a comparison between his sentence and those of his co-defendants is extraordinary and compelling. *Hunter,* 12 F.4th at 572. These were facts in existence at the time of sentencing and so cannot be "repackaged" as extraordinary and compelling now. *Id.* at 569.

Finally, while the government does not dispute that Brown submitted letters in support of his rehabilitation and education efforts, nor does it dispute that Brown has not had a disciplinary incident for a long time, rehabilitation cannot stand alone to constitute an extraordinary and compelling reason in favor of release. 28 U.S.C. § 994(t); *Hunter,* 12 F.4th at 572.

Brown has not satisfied the hurdle of presenting any extraordinary and compelling reasons in favor of his release. 18 U.S.C. § 3582(c)(1)(A). His motion should be denied.

### B. The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons," he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. 18 U.S.C. § 3582(c)(1)(A). A defendant's failure to establish that the § 3553(a) factors support relief is an independent basis for denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020); *accord*

*United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors); *United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (same).

This Court's "initial balancing of the § 3553(a) factors during [the defendant's] sentencing" is presumed to "remain[] an accurate assessment as to whether those factors justify a sentence reduction." *Sherwood*, 986 F.3d at 954. The defendant must therefore "make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today." *Id.* Brown has not made a compelling case. Here, even if the Court were to find that Brown established extraordinary and compelling reasons for his release, the § 3553(a) factors should still disqualify him.

For starters, Brown is serving a life sentence plus five years, which weighs heavily against release. The Sixth Circuit has repeatedly upheld the denial of compassionate release under § 3553(a) when a defendant has a long remaining sentence, including in a recent published decision. *Ruffin*, 978 F.3d at 1008; *accord Kincaid*, 802 F. App'x at 188–89; *Austin*, 825 F. App'x at 326; *see also United States v. Kincaid*, 805 F. App'x 394, 395–96 (6th Cir. 2020) ("[W]e don't think [the defendant] raises a close question."). This is because the original sentence already reflects the district court's evaluation of "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to

promote respect for the law" under § 3553(a). *Kincaid*, 802 F. App'x at 188; *accord Ruffin*, 978 F.3d at 1008.

The plain language of the compassionate-release statute makes the point even more directly: it requires that the defendant's reasons for release "warrant such a reduction" in his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). That inquiry depends, at least in part, on the length of time remaining on the defendant's sentence, requiring him to justify the magnitude of his requested sentence reduction. *Id.* So a defendant with many years left on his sentence, like Brown, must show that his reasons for release are so powerful that they "warrant" a "reduction" of that size. *Id.*

Brown, as a member of the "Best Friends" enterprise committed heinous crimes for which he received a just punishment. While relatively young, he was not a minor, and he had a criminal history and was even on parole when he committed the offenses of conviction. His specific victim, Walter Daniels, not to mention the other victims of the larger enterprise, deserve to have Brown imprisoned for life. Brown's offenses were the most serious –intentional killing in support of an enterprise, namely a cocaine and crack cocaine conspiracy that spanned several states. Brown's continued incarceration is further justified by the need to promote respect for the law and provide just punishment. The community needs to know that killing people while drug trafficking is taken seriously, not just for a few years

or until some may forget the impact of the "Best Friends" in the Detroit area. The need to deter others, generally and specifically, is likewise important. Brown contends that he is not a danger to the community and points to his behavior while incarcerated, but it is speculative as to how he may behave if released. The § 3553(a) factors do not support release.

### III. If the Court were to grant Brown's motion, it should order a 14-day quarantine before release.

If the Court were inclined to grant Brown's motion despite the government's arguments above, the Court should order that he be subjected to a 14-day quarantine before release.

### Conclusion

Brown's motion should be denied.

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney

*s/Julie A. Beck*
JULIE A. BECK
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
julie.beck@usdoj.gov
313-226-9717

Dated: October 21, 2021

## CERTIFICATION OF SERVICE

I hereby certify that on October 21, 2021, 2020, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will be served on all counsel of record.

I further certify that I served Gregory Brown by United States mail on October 21, 2021, as follows:

Gregory Brown, USMS #07163-041
Talladega FCI
PMB 1000
Talladega, AL 35160

                                        s/Julie A. Beck (P53291)
                                        Assistant United States Attorney
                                        211 W. Fort Street, Suite 2001
                                        Detroit, Michigan 48226
                                        Phone: (313) 226-9717
                                        E-mail: julie.beck@usdoj.gov